UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOYCE RILEY, | § | |
| Plaintiff, | § § § | |
| VS. | § | CIVIL ACTION NO. H-94-3996 |
| ST LUKE'S EPISCOPAL HOSPITAL, *et al*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

**I.    INTRODUCTION**

Before the Court are the defendants' joint motion for summary judgment (#302) and the separate no evidence motion for summary judgment of the defendant Texas Heart Institute ("THI") (#300)[1]. The plaintiff filed a single response to the motions (#307) followed by the defendants' joint reply (#316) and THI's separate reply (#320). After considering the motions, response and replies, the Court determines that THI's no evidence motions are not meritorious and should be denied. In light of this determination, the defendants' joint motion for summary judgment should also be denied.

**II.    NATURE AND SCOPE OF CASE**

This is a *qui tam* case, brought by the plaintiff, Joyce Riley, in behalf of the United States of America, and pursuant to the False Claims Act ("FCA"). 31 U.S.C. §§ 3729-31 (2000). The United States opted not to pursue the claims, which decision frees the plaintiff to pursue her claim(s) in her own right. While serving as a nurse in the Heart Transplant Unit at St. Luke's Episcopal Hospital, the plaintiff concluded that St. Luke's was preparing and filing false claims under the Medicare and CHAMPUS federal health insurance programs. While the plaintiff's

---

[1] Baylor College of Medicine was dismissed from this suit on June 23, 2008, by Order. *See* (Instrument #334).

allegations in the suit are numerous, they center, primarily, around alleged improper billings for services performed by Dr. Branislav Radovancevic, an unlicensed physician. The plaintiff pleads that Dr. Radovancevic served as a research scientist for THI, but performed medical procedures at St. Luke's at a time when he was not a member of the fellows program at St. Luke's or THI. His fellowship allegedly ended in July 1987, yet, according to the plaintiff, he continued to treat patients, give medical orders or participate in the clinical care for patients, and in general practice medicine or osteopathy.

## III. THE PLAINTIFF ASSERTIONS AND ASSOCIATED BURDENS OF PROOF

### A. *The Section 3729(a)(1) Claim*:

The plaintiff asserts that the defendants have engaged in a conspiracy to violate the FCA. Specifically, the plaintiff asserts that the defendants violated sections 3729(a)(1)-(3) of the FCA. Section 3729(a)(1) states that any person who:

> Knowingly presents, or causes to be presented to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval . . .

is liable under the Act. In order to prove any such claim, a plaintiff must establish that: (a) the accused presented or caused to be presented to the government a claim for payment or approval; (b) the claim was false or fraudulent; and, (c) the accused knew the claim was false or fraudulent. *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 676 (5th Cir. 2002)((citing *United States v. Basin Elec. Power Corp.*, 248 F.3d 781, 803 (8th Cir. 2001)).

B.  *The Section 3729(a)(2) Claim:*

The plaintiff also asserts that the defendants violated §3729(a)(2). That section makes it an offense for a person to:

> Knowingly make[s], use[s], or cause[s] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government. . .

In order to prove any such claim, a plaintiff must establish that: (a) the accused made a record or statement in order to get the government to pay money; (b) the record or statement was false or fraudulent; (c) the accused knew the record or statement was false or fraudulent. *United States ex rel Conner v. Salina Regional Health Center, Inc.*, ____ F.3d ____, 2008, WL4430668 (10th Cir. Oct. 2008).

C.  *The Section 3729(a)(3) Claim:*

Lastly, the plaintiff contends that the defendants violated § 3729(a)(3) by engaging in a conspiracy. To prove this claim a plaintiff must establish: (a) the existence of an unlawful agreement between the defendants to get a false or fraudulent claim allowed or paid by the government, and, (b) that at least one defendant engaged in an act in furtherance of the unlawful agreement. *United States ex rel Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008) (citations omitted).

## IV.  STANDARDS OF PROOF

The plaintiff does not take issue with the defendants' position that the evidentiary burden of proof in this case, absent government intervention, is the "clear and convincing" standard of evidence. *See United States v. Ueber*, 299 F.2d 310, 315-16 (6th Cir. 1962). However, this evidentiary standard loses its efficacy under a summary judgment review standard. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted.  *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).  Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."  Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164.  To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998).  In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## V. DISCUSSION/ANALYSIS

### A. *The Plaintiff's Conspiracy Claim*

The Court will not address the ultimate issue of whether St. Luke's, Surgical Associates of Texas, and doctors Radovancevic and Frazier engaged, as alleged, in making false or fraudulent claims in violation of the FCA. The Court is of the opinion that by addressing the plaintiff's conspiracy claim, *i.e.,* that the parties had an agreement to engage in conduct that violated the FCA, the substantive claims simply follows as a matter of factual proof. The Court is not suggesting, however, by this ruling that the plaintiff's case will withstand a motion for directed verdict on any or all of the asserted claims. With these precautions, the Court will address only THI's no evidence motion as it relates to the plaintiff's conspiracy claim.

The plaintiff asserts that the defendants, including THI, engaged in a conspiracy to submit or cause false claims to be submitted to the government. In this regard, the plaintiff contends that THI and at least one other defendant entered into an agreement or understanding that allowed Dr. Radovancevic to continue performing "rounds" after his fellowship ended in 1987. The plaintiff asserts that for eight (8) years after 1987, Dr. Radovancevic "acted as a licensed physician . . . at St. Luke's." In support of the conspiracy claim against THI, the plaintiff directs the Court to the following evidence, *i.e.*,; portions of exhibits A, G, H, I, J, N and O, attached to the plaintiff's response to the defendants' motion for summary judgment. An examination of these proffered documents is appropriate.

### B. *The Plaintiff's Conspiracy Claim Evidence*

Attached to the plaintiff's main document response is exhibit "A", the declaration of Anne Marie Mooney. That exhibit, particularly page two (2), essentially states that the defendants violated the FCA by permitting Dr. Radovancevic to practice medicine at a time when he did not

hold a license in Texas. The declaration points to the state and federal statutes as defining the qualifications, licensing and regulation of physicians. *See* Medical Practice Act; (Tex. Rev. Civ. Stat. Ann. Art. 4495b, 4590e) and 42 C.F.R. § 440.50. She concludes that, after 1987 when Dr. Radovancevic completed his fellowship, he was no longer qualified to act a physician.

Next, the plaintiff directs the Court to exhibit "I", the deposition of Michael G. McGee, THI's Laboratory Director. *See* [McGee Deposition, page 29, lines 2-9]. There, McGee describes Dr. Radovancevic's position with THI as a member of the THI research team. He describes the research team was involved in both laboratory and clinical research. He testified that Dr. Radovancevic was administratively supervised by Bill Robinson. At pages 87 and 88, of McGee's deposition, the plaintiff points to the following testimony:

> Q. Are you aware of any decision that was made either through THI or at St. Luke's which limited Dr. Radovancevic's ability to go to clinical patient rounds within St. Luke's Episcopal Hospital in 1996 or sometime thereafter?
>
> A. Yes.
>
> . . .
>
> Q. Do you have an understanding of why that occurred?
>
> A. I think it was because of concerns about different things that were going on and how that might be perceived, you know. But I don't know the specifics of it.
>
> . . .

Exhibit "J" is a memo dated August 24, 1995, from Michael G. McGee to the president of THI, Dr. Denton A Cooley, regarding Dr. Radovancevic. The sum of the exhibit expresses McGee's desire to increase Dr. Radovancevic's salary to $104,000. Exhibit "O" is simply the

THI certificate, awarding Dr. Radovancevic a three (3) year fellowship, dated July 1, 1984 through June 30, 1987.

Finally, there is exhibit "N", a memo, dated September 18, 1989, from Rosemary Mackey, Vice-President of Corporate Development at St. Luke's, directed to Charles H. Edmonds, Executive Vice-President of THI.  The subject matter of the memo concerns the propriety of continuing the services of Dr. Radovancevic on the clinical side of the Transplant Service.  The relevant portions state:

> Doctor Radovancevic has not passed the ECFMG exam, but has taken the exam again and is awaiting the results.  We would like to help Doctor Radovancevic, but until he receives his ECFMG, he is not eligible for a Texas License.  As you may know, Ms. Hoechatter has provided both Mr. McGee and Ms. Nangle with information regarding requirements that CV Research and Transplant Service must meet to obtain Institutional Permits from the Texas Board for fellows.  Since these have not been submitted, that is also not a possibility at this time.  Until Doctor Radovancevic can obtain either a Texas License or an Institutional Permit, he may not provide clinical care to patients.

### C. *The Evidence Supports Conspiracy Claim*

THI bases its no evidence motion for summary judgment on two assertions.  First, THI asserts that the plaintiff cannot provide any evidence that THI participated, presented or caused false claims for payment to be made to the government under the federal health insurance funds.  Second, THI asserts that the plaintiff cannot produce evidence that THI was part of a conspiracy to defraud the government.  Because the Court is not a fact finder in this exercise, the Court will not distinguish between the "intent" necessary to prove knowing participation in a false claim scheme and the "intent" necessary to prove a conspiracy to defraud in such a scheme.

Earlier, the Court denoted the burden of proof required of the plaintiff to establish a conspiracy on the part of THI; therefore, the Court will not repeat that standard. Based on that standard, it is the Court's finding that the plaintiff has presented sufficient evidence from which a court and jury may determine that an unlawful, yet unwritten, agreement existed between St. Luke's and THI after September 18, 1989, at the latest, concerning continuation of Dr. Radovancevic in the clinical side of the Heart Transplant Service. *See City of* Houston, 523 F.3d at 343. This finding is supported by substantial evidence, not the least of which is Rosemary Mackey's September 18, 1989, letter to Charles H. Edmonds. See [Exhibit "N", Plaintiff's Response, Inst. No. 307]. There the evidence indicates that both St. Luke's and THI were aware that Dr. Radovancevic was unlicensed and, in light of that fact, that he would be barred from participation in the clinical care team rounds without an Institutional Permit. And, there is no evidence that Dr. Radovancevic's restriction, due to the lack of a medical license, was allayed by an Institutional Permit. The nature and extent of that restriction does not need to be determined at this time since testimony on both sides of the issue, concerning the extent of the restriction, is a jury issue.

Based on these facts alone, and without determining the propriety or credibility of witnesses, a jury may conclude that officials at St. Luke's and THI "winked at" the circumstance while ignoring the potential legal implications. *See Direct Sales Co. v. United States,* 319 U.S. 703, 714 (1943). This is the type of evidence from which a jury could find that the necessary specific intent to defraud was present in the defendants' collective minds.

**Conclusion:**

In light of the numerous entries that appear to have been made by or at the behest of Dr. Radovancevic after 1989, during "roundings" for transplant patients, a jury could find that a

conspiracy to violate 31 U.S.C. § 3279(a)(3) existed between the several defendants. Therefore, the Court CONCLUDES and DETERMINES that THI's no evidence motion for summary judgment should be DENIED. The Court is also of the opinion, in light of this ruling, that the remaining defendants' joint motion for summary judgment should be and it is HEREBY Denied.

SIGNED and ENTERED this 24th day of October, 2008.

_____
Kenneth M. Hoyt
United States District Judge